FILED

FEB - 5 2007

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

# FOR PUBLICATION

ENTERED

FEB - 6 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY            Deputy Clerk

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. SA 00-19215 JR |
| FLASHCOM, INC., | Adv. No. SA 02-01620 JR |
| Debtor. | Chapter 11 |
| CAROLYN A. DYE, Liquidating Trustee, | |
| Plaintiff, | **MEMORANDUM OPINION** |
| vs. | |
| ANDRA SACHS; COMMUNICATIONS VENTURES III, LP; COMMUNICATIONS VENTURES III CEO & ENTREPRENEURS' FUNDS LP; MAYFIELD IX; MAYFIELD ASSOCIATES FUNDS IV; DAVID HELFICH; TODD BROOKS; BRADFORD SACHS; RICHARD RASMUS; and KEVIN FONG, | |
| Defendants. | Date:    December 11, 2006 Time:    2:00 P.M. Place:    Courtroom 5A |

### I.    INTRODUCTION

On July 22, 2002, Carolyn Dye ("Movant") filed an amended complaint against the defendants (collectively, "Defendants"), in part, to avoid and recover the debtor's transfer of $9 million to Andra Sachs ("Andra") on February 23, 2000 (the "Transfer") under

1   11 U.S.C. §§ 547(b) and 550.[1]   Thereafter, Movant and Andra

2   reached a settlement.   In futherance of the settlement, Andra

3   consented to the entry of a judgment avoiding the Transfer under

4   § 547(b) as a preferential transfer.

5       On August 25, 2006, Movant filed a motion (the "Motion") for

6   partial summary judgment, citing § 550, to recover $9 million

7   from Communications Ventures III, LP, Communications Ventures III

8   CEO & Entrepreneurs' Funds, LP, Mayfield IX, and Mayfield

9   Associates Funds IV (collectively, "Respondents") as entities for

10   whose benefit the Transfer was made.   Respondents opposed.

11   Following a hearing on Decemeber 11, 2006, I took the matter

12   under submission to determine whether the entry of the stipulated

13   judgment precludes Respondents from defending the avoidability of

14   the Transfer.

15                     **II.   JURISDICTION**

16       I have jurisdiction over this matter under 28 U.S.C.

17   § 157(b)(1).   This is a core proceeding under 28 U.S.C. §§ 157

18   (b)(2)(A),(F), (O).

19                 **III.   STATEMENT OF FACTS**

20       Andra and her husband, Brad Sachs ("Brad"), founded

21   Flashcom, Inc. ("Debtor"), a telecom startup, during the late

22   1990s.   In June 1999, Respondents invested approximately

23

24       [1] Unless otherwise indicated, all chapter, section, and rule
references are to the Bankruptcy Code (the "Code"), 11 U.S.C.

25   §§ 101-1330, prior to its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 (the "Act"), Pub.

26   L. 109-8, 119 Stat. 23, because this case was filed before the

27   Act's effective date (October 17, 2005), and to the Federal Rules
of Bankruptcy Procedure (the "Rules"), Rules 1001-9036.

28

$15 million for Debtor's Series A preferred shares. As a result, David Helfich, Todd Brooks, and Kevin Fong (collectively, the "Directors"), alleged principals of Respondents, were appointed to Debtor's board of directors.

Concerned with Andra's continued involvement in Debtor, Respondents entered into discussions with Andra for her removal. This resulted in a Loan and Pledge Agreement (the "Loan Agreement"), dated September 3, 1999, whereby Respondents loaned Andra $1 million (the "Loan") and agreed to loan Andra an additional $9 million upon Debtor obtaining at least $30 million in Series B financing. The Loan was evidenced by four non-recourse promissory notes (the "Notes"), and secured by Andra's interest in 500,000 shares of Debtor's common stock. Respondents and Andra also executed a series of four "Purchase Option" agreements and four "Put Option" agreements (collectively, the "Options"). In effect, the Options provided for the transfer of $1 million worth of Andra's shares to Respondents in satisfaction of the Loan upon Debtor obtaining the above financing.[2]

On February 8, 2000, Debtor, Respondents, and Andra restructured the arrangement contemplated by the Loan Agreement and the Options. Respondents and Andra executed an amendment to the Loan Agreement (the "Amendment"), terminating the parties' obligations under the Options. Also, Debtor, Respondents, and

---

[2] Specifically, pursuant to the Purchase Options, Respondents had the right to purchase that number of shares equal to the amount of the Notes at 85% of the per share price. The Put Options, on the other hand, provided that Andra had the right to sell or put her shares to Respondents. Under both the Purchase Options and the Put Options, Respondents had the right to obtain the shares by applying the amounts due on the Notes.

1  Andra executed a Stock Purchase Agreement (the "Stock Purchase
2  Agreement"), reinstating Respondents obligation to purchase
3  $1 million worth of Andra's shares of Debtor's common stock, and
4  requiring Debtor to redeem $9 million worth of Andra's shares at
5  85% of the per share price.

6      Eight days later, Debtor and the Series B investors executed
7  a Series B Preferred Stock Purchase Agreement (the "Series B
8  Agreement"), providing for the purchase of $84 million of
9  Debtor's Series B preferred stock at $6.57 per share.   In
10 addition, the Series B Agreement provided that $9 million of the
11 proceeds were to be used to redeem Andra's stock.   On February
12 23, 2000, Debtor paid Andra $9 million to redeem 1,611,604 shares
13 at a redemption price of $5.58 per share.

14     On December 8, 2000, Debtor filed a voluntary chapter 11
15 petition.   Thereafter, Debtor filed a plan of reorganization that
16 was confirmed on December 11, 2001.   Debtor's plan designated
17 Movant as the liquidating trustee for Debtor's estate.

18     On July 11, 2002, Movant commenced this adversary proceeding
19 (the "Stock Redemption Proceeding") against Defendants.   On July
20 22, 2002, Movant filed an amended complaint (the "Complaint").
21 In the Complaint, Movant alleged that Defendants either
22 orchestrated or participated in certain unauthorized, improper,
23 or otherwise avoidable agreements and transfers with Debtor
24 between September 1999 and February 2000.   Specifically, Movant
25 asserted that the Transfer was avoidable as a preferential
26 transfer to or for the benefit of Andra, and recoverable from
27 Andra, as the initial transferee, or Respondents and the
28 Directors, as entities for whose benefit the Transfer was made.

4

1    On September 2, 2005, Movant, Andra, and others reached a
2  global settlement (the "Global Settlement Agreement").  The
3  Global Settlement Agreement was designed to resolve the Stock
4  Redemption Proceeding as to Andra.[3]  By order entered November 1,
5  2005, I approved the Global Settlement Agreement.  On August 8,
6  2006, a judgment (the "Stipulated Judgment") was entered,
7  providing that: "(a) [t]he wire transfer by Flashcom, Inc. of $9
8  million made on February 23, 2000 to Memory Max, dba a Taste of
9  Napa, which was made for the benefit of Andra Sachs, is avoided
10 as a preferential transfer pursuant to 11 U.S.C. § 547(b)."

11   On August 25, 2006, Movant moved for partial summary
12 judgment that, pursuant to § 550, she may recover $9 million from
13 Respondents.  Movant argued that entry of the Stipulated Judgment
14 avoided the Transfer to the extent of $9 million, and therefore,
15 she is entitled to recover $9 million from Respondents as
16 entities for whose benefit the Transfer was made.  Respondents
17 opposed the Motion, arguing that they have the right to litigate
18 the avoidability of the Transfer as a preference, and that they
19 were not the beneficiaries of the Transfer.  Following a hearing
20 on December 11, 2006, I took the matter under submission to

21

22   [3] In pertinent part, the Global Settlement Agreement
23 provided that Andra, without admitting liability and in
   furtherance of the Global Settlement Agreement, shall agree to
24 the entry of a judgment in the amount of $9 million under
   § 547(b) in favor of Movant, and "Andra shall sign a second
25 stipulated judgment pursuant to § 550(a) for recovery against
   Andra on the [Movant] Avoidance Judgment, which will be entered
26 if Andra defaults upon her obligation to pay Movant $50,000 or
   $62,000 depending upon the amount recovered by Movant from
27 [Respondents and the Directors] in the Stock Redemption
28 Proceeding."

5

1  determine: (A) whether the entry of the Stipulated Judgment

2  precludes Respondents from defending the avoidability of the

3  Transfer under § 547(b); and (B) whether Respondents are entities

4  for whose benefit the Transfer was made.

5                          **IV.   DISCUSSION**

6      **A.   *Entry of the Stipulated Judgment cannot Deprive the***

7             ***Respondents of Their Right to Defend the §§ 547 and 550***

8             ***Claims Asserted against Them.***

9      Section 547(b) of the Code permits a bankruptcy trustee to

10 avoid certain preferential pre-petition transfers of interests in

11 property of the debtor.  Section 550 provides in relevant part

12 that:

13          [T]o the extent that a transfer is avoided
            under section 544, 545, 547, 548, 549,
14          553(b), or 724(a) of this title, the trustee
            may recover, for the benefit of the estate,
15          the property transferred, or, if the court so
            orders, the value of such property, from
16          (1) the initial transferee of such transfer
            or the entity for whose benefit such transfer
17          was made; or
            (2) any immediate or mediate transferee of
18          such initial transferee.

19 11 U.S.C. § 550(a)(1)-(2).  Put simply, § 547(b) specifies a type

20 of transfer that may be avoided by a bankruptcy trustee.  See

21 Crafts Plus+, Inc. v. Foothill Capital Corp. (In re Crafts

22 Plus+), 220 B.R. 331, 334 (Bankr. W.D. Tex. 1998).  Separately,

23 § 550 identifies the parties against whom a trustee may recover

24 the avoided transfer for the benefit of the estate.  Id.

25     Movant argues that the entry of the Stipulated Judgment

26 avoided the Transfer to the extent of $9 million.  For that

27 reason, Movant argues that she is no longer required to establish

28 the avoidability of the Transfer but may proceed to recover the

                                6

1  value of the Transfer from Respondents under § 550(a), provided
2  that she can show that they were entities for whose benefit the
3  Transfer was made.  Respondents reply that they are not bound by
4  the Stipulated Judgment, and more importantly, that they have the
5  right to litigate the avoidability of the Transfer.

6       This appears to be a matter of first impression in the Ninth
7  Circuit.  Movant has not provided any direct authority for her
8  position.[4]  However, Movant asserts that a plain reading of
9  §§ 547(b) and 550(a), and the separation between the concepts of
10 avoidance and recovery compel summary judgment in her favor.[5]

11      As with any statutory construction dispute, I must begin

12

13      [4] Movant relies heavily on <u>Danning v. Miller (In re Bullion
14 Reserve of North America)</u>, 922 F.2d 544 (9th Cir. 1991), to
   support her position.  In <u>Danning</u>, the trustee entered into an
15 agreement with the initial transferee stipulating to the
   avoidability of the initial transfer under § 548.  <u>Id.</u> at 546.
16 The trustee then filed suit against the immediate transferee to
   recover the fraudulent transfer.  <u>Id.</u> at 546.  Movant finds
17 <u>Danning</u> persuasive because the trustee established the avoidance
   of a transfer by stipulation with the initial transferee and then
18 sought to recover from a different transferee under § 550(a).
   However, in <u>Danning</u>, the immediate transferee, subject to the
19 § 550(a) action, conceded that the transfer was avoidable under
   § 548.  <u>Id.</u> at 547.  Therefore, the Ninth Circuit was "faced with
20 the narrow issue of whether Miller was a 'transferee' of the $1.5
   million within the meaning of section 550(a)(1) or section
21 550(a)(2)."  <u>Id.</u>  The Ninth Circuit did not address whether the
   immediate transferee was precluded from litigating the
22 avoidability of the transfer, and therefore <u>Danning</u> is of little
   help to the present dispute.
23

24      [5] Both the House and Senate Reports accompanying the
25 Bankruptcy Reform Act of 1978 state that § 550 "enunciates the
   separation between the concepts of avoiding a transfer and
26 recovering from the transferee."  H.R. REP. No. 95-595, at 375
   (1977), <i>reprinted in</i> 1978 U.S.C.C.A.N. 5963, 6331; S. REP. No. 95-
27 989, at 90 (1978) <i>reprinted in</i> 1978 U.S.C.C.A.N. 5787, 5876.

28

1   with language of the statute.  <u>Barnhart v. Sigmon Coal Co., Inc.</u>,

2   534 U.S. 438, 450 (2002).  "[The] first step in interpreting a

3   statute is to determine whether the language at issue has a plain

4   and unambiguous meaning with regard to the particular dispute in

5   the case."  <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 340, 117

6   S.Ct. 843, 846 (1997).  "[I]f the statutory language is

7   unambiguous and the statutory scheme is coherent and

8   consistent[,]" then the court must cease its inquiry, and simply

9   enforce the statute as written.  <u>Id.</u> (quoting <u>United States v.</u>

10  <u>Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989)) (internal

11  quotation marks omitted); <u>see also</u> <u>Perlman v. Catapult</u>

12  <u>Entertainment, Inc. (In re Catapult Entertainment, Inc.)</u>, 165

13  F.3d 747, 754 (9th Cir. 1999).  Only in rare cases may a court

14  inquire beyond the plain language of a statute.  <u>Ron Pair</u>, 489

15  U.S. at 242; <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 U.S.

16  469, 475 (1992).  "The plainness or ambiguity of statutory

17  language is determined by reference to the language itself, the

18  specific context in which that language is used, and the broader

19  context of the statute as a whole."  <u>Robinson</u>, 519 U.S. at 341.

20       The language used in § 550(a) is clear.  Once a trustee

21  proves that the elements of an avoidance statute, such as § 547,

22  are satisfied "the unambiguous language of § 550(a) then

23  identifies the party responsible for repayment of the

24  preference."  <u>Official Unsecured Creditors Comm. of Sufolla, Inc.</u>

25  <u>v. U.S. Nat'l Bank of Oregon (In re Sufolla)</u>, 2 F.3d 977, 980

26  (9th Cir. 1993) (citing <u>Levit v. Ingersoll Rand Fin. Corp. (In re</u>

27  <u>V.N. Deprizio Constr.)</u>, 874 F.2d 1186, 1194 (7th Cir. 1989)); <u>see</u>

28  <u>also</u> <u>Kendall v. Sorani (In re Richmond Produce Co., Inc.)</u>, 195

8

1  B.R. 455, 463 (N.D. Cal 1996).  The trustee may recover from "the
2  initial transferee . . . or the entity for whose benefit the
3  transfer was made . . . or . . . any immediate or mediate
4  transferee . . . ."  11 U.S.C. § 550(a).

5       This conclusion does not end my inquiry.  Importantly,
6  neither the Code nor the Rules specify whether a § 550(a)
7  transferee has the right to litigate and/or raise defenses to the
8  avoidablity of a transfer as a preference.  See General Motors
9  Acceptance Corp. v. Rodgers (In re Laguna Beach Motors, Inc.),
10  148 B.R. 317, 320 n.4 (9th Cir. BAP 1992) (stating that the Code
11  contains no language limiting who can raise the defenses provided
12  in § 547(c)).  Rather, the Code and Rules are silent, and hence
13  ambiguous, leaving the applicable statutory language reasonably
14  susceptible to conflicting interpretations.

15       Where a statute is ambiguous, a court may look beyond the
16  statutory language to the legislative history, and the purpose of
17  the statutory scheme to determine the intent of Congress.  United
18  States v. Buckland, 289 F.3d 558, 565 (9th Cir. 2002) (quoting
19  Adams Fruit Co. v. Barrett, 494 U.S. 638, 642 (1990)); United
20  States v. Davidson, 246 F.3d 1240, 1246 (9th Cir. 2001).  Here,
21  these tools for determining congressional intent are of little
22  assistance because the congressional record and the legislative
23  history are silent with respect to the issue before the court.

24       However, another well-settled canon of statutory
25  construction is not only helpful, but controlling.  "[I]f an
26  otherwise acceptable construction of a statute would raise
27  serious constitutional problems, and where an alternative
28  interpretation of the statute is 'fairly possible,' we are

9

1  obligated to construe the statute to avoid such problems."
2  I.N.S. v. St. Cyr, 533 U.S. 289, 299-300 (2001) (citation
3  omitted); Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg.
4  and Const. Trades Council, 485 U.S. 568, 575 (1988).  Courts do
5  not have "the unfettered prerogative to rewrite a statute in
6  order to save it or to 'ignore the legislative will' behind it."
7  Buckland, 289 F.3d at 564 (quoting Miller v. French, 530 U.S.
8  327, 341 (2000)).  The canon of constitutional doubt permits a
9  court to avoid constitutional concerns "only where the saving
10 construction is not plainly contrary to the intent of Congress."
11 Miller, 530 U.S. 327, 341 (2000) (quoting Edward J. DeBartolo
12 Corp., 485 U.S. at 575 (1988)) (internal quotation marks
13 omitted).  Where the intent of Congress is clear, a court must
14 give effect to that intent.  Miller, 530 U.S. at 336.

15      The Due Process Clause of the Fifth Amendment provides that
16 "no person shall . . . be deprived of life, liberty, or property,
17 without due process of law."  U.S. CONST. amend. V.  A person's
18 right to due process of law is fundamental to our jurisprudence,
19 Grannis v. Ordean, 234 U.S. 385, 394 (1914), and for more than a
20 century, the central requisite of due process has been the right
21 to a meaningful opportunity to be heard.  Fuentes v. Shevin, 407
22 U.S. 67, 80 (1972) (quoting Baldwin v. Hale, 68 U.S. 223, 233
23 (1863)).  The purpose for providing such due process is clear: to
24 prevent the mistaken or unfair deprivation of one's property.
25 Fuentes, 407 U.S. at 81.  Thus, a person has the right to be
26 heard whenever his life, liberty, or property is at stake in a
27 judicial proceeding.  See Ownbey v. Morgan, 256 U.S. 94, 111
28 (1921); see also Dusenbery v. U.S., 534 U.S. 161, 167 (2002)

10

1  (quoting <u>United States v. James Daniel Good Real Property</u>, 510
2  U.S. 43, 48 (1993)).

3       To interpret §§ 547 and 550 Movant's way would raise
4  substantial due process concerns, and would lead to anomalous
5  results.  See <u>Thompson v. Jonovich (In re Food & Fibre</u>
6  <u>Protection, Ltd.)</u>, 168 B.R. 408, 415-16 (Bankr. D. Ariz. 1994).
7  Movant sued Respondents to avoid and recover the Transfer.[6]  As a
8  result, Movant has clearly put Respondents' property at stake.
9  If Movant prevails, Respondents will be deprived of $9 million.
10 Moreover, Respondents' ability to defend the § 550 claim is of
11 little consolation.  The avoidability of the Transfer is a
12 prerequisite to Respondents' potential liability.  Once it is
13 determined that a preferential transfer was made, Movant need
14 only show that Respondents received some benefit to hold them
15 strictly liable.  See <u>General Elec. Capital Auto Lease, Inc. v.</u>
16 <u>Broach (In re Lucas Dallas, Inc.)</u>, 185 B.R. 801, 808 (9th Cir.
17 BAP 1995) (citing <u>Danning</u>, 922 F.2d at 547) (holding that initial
18 transferees are strictly liable for an avoided transfer).

19     Based on the foregoing, I conclude that Respondents have a
20 constitutional right to defend the § 547(b) claim asserted
21 against them before they can be deprived of the value of the
22 property transferred under § 550(a).  I note that every court to
23 address this issue has, for one reason or another, held that a

24

---

25      [6] Movant emphasizes that the § 547 claim was asserted
26 against Andra, only, and not Respondents.  However, a review of
   the Complaint does not support Movant's position.  Nowhere in the
27 Complaint does it specify that certain claims are asserted
   against Andra or Respondents, only.  Rather, the Complaint and
28 each claim therein were filed against Defendants.

11

stipulated or default judgment entered in an avoidance action
does not preclude the defendants in a recovery action from
disputing the avoidability of the transfer and raising
appropriate defenses.  See Thompson, 168 B.R. at 415-16; see also
Morris v. Emprise Bank (In re Jones Storage and Moving, Inc.),
2005 Bankr. LEXIS 662, *14-16 (Bankr. D. Kan. 2005).
Accordingly, it would be inherently unfair and inappropriate for
this court to deny Respondents this fundamental right based on a
settlement reached by Sachs, a co-defendant, for less than 1% of
the requested recovery.  Such an outcome would, for obvious
reasons, open the door to potential substantial abuse.[7]

     This interpretation is not contrary to the relevant
legislative history, the overall statutory scheme, and Ninth
Circuit precedent.[8]  Avoidance and recovery remain conceptually
bifurcated as Congress intended.  H.R. REP. No. 95-595; S. REP.
No. 95-989; see also Sufolla, 2 F.3d at 980.  Sections 547 and
550 remain distinct claims, requiring the litigation of different
elements and defenses with different statutes of limitation.[9]

_____

     [7] For example, a potential transferee might stipulate to the
avoidance of a transfer in exchange for a trustee's promise to
seek recovery from third parties.  See Morris, 2005 Bankr. LEXIS
662, *16.

     [8] The Ninth Circuit's decision in Sufolla, upon which Movant
relies, does not compel a contrary result.  In that case, the
Ninth Circuit was not forced to decide the issue currently before
the court because, at trial, the defendant was afforded the
opportunity to litigate the avoidability of the transfer and
raise any defenses thereto.  See Sufolla, 2 F.3d at 978-79.

     [9] Movant makes much of the fact that § 550(f)(1) provides
that a proceeding to recover a transfer must be commenced not
later than the earlier of one year after the avoidance of the

1 Furthermore, avoidability remains an attribute of the transfer.

2 See Sufolla, 2 F.3d at 982 (quoting Deprizio, 874 F.2d at 1195).

3 Movant is not required to prove that the Transfer is avoidable as

4 to Respondents, but that each element of § 547(b) is satisfied.

5     As noted by numerous courts, § 547 addresses transfers, and

6 not creditors or transferees.  See Crafts Plus+, 220 B.R. at 334.

7 That is, § 547 does not specify the proper defendant for a

8 preference action.  Id.  Rather, § 550 identifies who the trustee

9 may proceed against.  Moreover, avoidance and recovery, while

10 conceptually separate, do not occur in a vacuum.  They are

11 intertwined, as both are typically required to make the estate

12 whole.  As such, it is reasonable to believe that Congress

13 intended the trustee to avoid and recover a transfer against the

14 same entity, whether it be in one proceeding or two.[10]

15     Lastly, Respondents have not waived their fundamental right

16 to due process.  Respondents were named defendants to each cause

17 of action in the Complaint.  Similarly, Respondents answered

18 without limitation.  True, the Global Settlement Agreement was

19 approved after notice and hearing at which Respondents were

20 present.  However, neither the court nor Respondents were aware

21

22 transfer, or the time the case is closed or dismissed.  However,

23 my interpretation does not render this subsection meaningless
because a trustee has a specified time to avoid a transfer and an

24 additional year after avoidance to recover the transfer under
§ 550.

25

26     [10] This belief is further supported by § 547(g), which
provides that "the creditor or party in interest against whom

27 recovery or avoidance is sought has the burden of proving the
nonavoidability of a transfer . . . ."  11 U.S.C. § 547(g)

28 (emphasis added).

1  of Movant's intent to use the Stipulated Judgment to terminate
2  Respondents' right to litigate the preference claim.  In fact,
3  Movant indicated that approval of the Global Settlement Agreement
4  would not affect her claims against Respondents.  As such, the
5  hearing on the Global Settlement Agreement did not provide
6  Respondents with a meaningful opportunity to be heard.

7      In sum, to recover the amount of the Transfer from
8  Respondents, Movant must prove the elements of avoidance under
9  § 547(b) by a preponderance of the evidence.  Movant has failed
10 to provide any evidence regarding the avoidability of the
11 Transfer.  Accordingly, the Motion is denied.

12     **B.   *Genuine Issues of Material Fact Exist Whether***
        ***Respondents are Entities for Whose Benefit the Transfer***
13      ***was made.***

14     As stated above, to the exent a transfer is avoided, the
15
16 trustee may recover the property transferred, or its value, from
17 "(1) the initial transferee of such transfer or the entity for
18 whose benefit such transfer was made; or (2) any immediate or
19 mediate transferee of such initial transferee."
20 11 U.S.C. § 550(a)(1)-(2).  Because Andra is the initial
21 transferee, recovery of the Transfer under § 550 from Respondents
22 is not appropriate unless they constitute an "entity for whose
23 benefit such transfer was made."  "Two frequently cited examples
24 of an entity for whose benefit the transfer was made are (1) a
25
26 guarantor of the debtor and (2) a debtor of the initial transferee."
27 5 L. KING, COLLIER ON BANKRUPTCY ¶ 550.02[4] (15th ed. rev. 2001)
28

14

1   (citing <u>Bonded Fin. Servs., Inc. v. European Am. Bank</u>, 838 F.2d

2   890, 895 (7th Cir. 1988) ("The paradigm 'entity for whose benefit

3   such transfer was made' is a guarantor or debtor – someone who

4   receives the benefit but not the money.")).   Importantly, the

5   "entity need not actually benefit, so long as the transfer was

6   made for his benefit." <u>Danning</u>, 922 F.2d at 547.

7

8       Movant argues that Respondents are entities for whose

9   benefit the Transfer was made because Debtor made the Transfer to

10  extinguish Respondents' obligations to Andra.   Movant is correct

11  that after execution of the Loan Agreement, Andra had a

12  contingent right to payment from Respondents.   Therefore, as

13  contended by Movant, Respondents were debtors of Andra, and

14  potential beneficiaries of the Transfer under § 550. <u>See</u> 11

15  U.S.C. § 101(5)(A), (12).   However, Respondents argue that the

16  Amendment and the Stock Redemption Agreement, executed fifteen

17  days prior to the Transfer, terminated Respondents obligation to

18  pay Andra $9 million, and as a result, Debtor made the Transfer

19  to satisfy its contractual obligation to pay Andra $9 million, as

20  opposed to benefitting Respondents.

21

22      The Amendment, standing alone, did not terminate

23  Respondents' obligation to loan Andra $9 million contingent on

24  Debtor obtaining the requisite financing.   Rather, the Amendment

25  terminated only the Options, requiring Respondents to purchase

26  $1 million worth of Andra's stock and requiring Andra to sell the

27

28

15

1   same in satisfaction of the Loan.  Arguably, Respondents'
2   contingent $9 million loan obligation remained unaffected.  The
3   Amendment stated that, except as expressly modified, the terms of
4   the Loan Agreement remained in full force.
5
6        Debtor was also indebted to Andra.  Concurrently with the
7   execution of the Amendment, Debtor, Andra, and Respondents
8   executed the Stock Redemption Agreement.  Debtor agreed to redeem
9   $9 million worth of Andra's shares.  Respondents were neither
10  guarantors nor co-obligors of Debtor's obligation to Andra.
11  Moreover, the Stock Redemption Agreement did not cross reference
12  the $9 million loan, and specifically, did not provide for the
13  release and/or satisfaction of Respondents' loan obligation to
14
15  Andra upon the Transfer.  Therefore, a dispute of fact exists
16  whether Debtor's redemption of Andra's shares was intended to
17  release Respondents' obligation to loan Andra $9 million.

18       In sum, the parties dispute whether the execution of the
19  Amendment and the Stock Purchase Agreement was intended to
20  extinguish Respondents' obligation to loan Andra $9 million, and
21  ultimately, purchase $9 million worth of Andra's stock.  Neither
22  agreement provides for the satisfaction of Respondents' loan
23  obligation upon their execution or upon the Transfer.  Lastly,
24
25  while the restructuring of the deal to buy-out Andra enabled
26  Respondents to purchase Series B Preferred shares, as opposed to
27  Andra's common stock, genuine issues of fact exist whether Debtor
28

16

1  was solvent at the time of the Transfer, and therefore, whether

2  Respondents received any real benefit from obtaining preferred

3  shares.  Accordingly, genuine issues of fact exist whether the

4  Tranfer was made to benefit Respondents, and specifically, to

5  satisfy Respondents' contingent loan obligation to Andra.

6

## V.   CONCLUSION

7

8     The entry of the Stipulated Judgment did not avoid the

9  Transfer.  Respondents have a constitutional right to defend the

10 claims asserted against them before they can be deprived of their

11 property.  Therefore, to recover the Transfer from Respondents,

12 Movant must prove the elements of § 547.  Moreover, genuine

13 issues of material fact remain as to whether Defendants are

14
   entities for whose benefit the Transfer was made.  Accordingly,
15
   the Motion is denied.
16

17    This memorandum decision shall constitute my findings of

18 fact and conclusions of law.

19 Dated: February 5, 2007

20

21                                     JOHN E. RYAN
                                       United States Bankruptcy Judge
22

23

24

25

26

27

28

                                   17

| | | |
|---|---|---|
| 1 | | |

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA

In re                                    )    Case No.        SA 00-19215 JR
                                         )    Adversary No.   SA 02-01620 JR
      FLASHCOM, INC. ,                   )
                                         )    NOTICE OF ENTRY OF ORDER
                        Debtor.          )
_____)

To:

OFFICE OF THE UNITED STATES TRUSTEE
411 West Fourth Street
Santa Ana, CA 92701-8000

DAVID R. WEINSTEIN
Weinstein, Weiss, & Ordubegian LLP
1925 Century Park East, Suite 1150
Los Angeles, California 90067

DANIEL SCOTT SCHECTER
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071

ROBERT A. FRANKLIN
Murray & Murray
19400 Stevens Creek Boulevard, Suite 200
Cupertino, CA 95014

        You are hereby notified, pursuant to Bankruptcy Rule 9022 that
a judgment or order entitled MEMORANDUM OPINION and ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT was entered on
_____FEB - 6 2007_____.

        I hereby certify that I mailed a copy of this notice to the
above-named persons on _____FEB - 6 2007_____.

Dated: FEB - 6 2007

                                    JON D. CERETTO

                              By    A. M⁼Call
                                    _____

                                    Deputy Clerk